23CA0084 Peo v Johnson 03-27-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA0084
Arapahoe County District Court No. 19CR458
Honorable Elizabeth Weishaupl, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Marcus Alan Johnson,

Defendant-Appellant.

---

JUDGMENT AFFIRMED

Division IV
Opinion by JUDGE PAWAR
Harris and Grove, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced March 27, 2025

---

Philip J. Weiser, Attorney General, Paul Koehler, Senior Counsel, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Joseph Paul Hough, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    Defendant, Marcus Alan Johnson, appeals the judgment of conviction entered on a jury verdict finding him guilty of second degree murder.  We affirm.

## I.    Background

¶ 2    Johnson and the victim, T.J. Cunningham, were neighbors who had a contentious relationship and had engaged in several verbal altercations over a period of many months.  One Sunday morning, the two men got into another argument on the street in front of their respective homes.  Although it did not become physical in the street, immediately after the two men retreated to their homes, Cunningham told his brother to come with him because he and Johnson were going to fight to settle their differences.  Cunningham and his brother drove to a nearby high school parking lot.  Johnson followed.

¶ 3    After both men parked, they exited their vehicles and walked toward each other.  As they converged, Johnson drew a gun and shot Cunningham three times from a distance of several feet, killing him.  Johnson then called 911 to report the shooting and claimed he had shot Cunningham in self-defense.

¶ 4     The prosecution charged Johnson with first degree murder. Before trial, the prosecution moved to exclude evidence from the autopsy that showed the presence of cocaine metabolite and tetrahydrocannabinol (THC) metabolite in Cunningham's blood. At trial, the court ruled the evidence inadmissible and excluded it. The court also excluded testimony from two witnesses about whether Cunningham, who had played professional football, might have been diagnosed with or suffering from chronic traumatic encephalopathy (CTE).

¶ 5     Johnson testified in his own defense, explaining that he shot Cunningham to defend himself from Cunningham and Cunningham's brother, who was at the scene but waiting near Cunningham's vehicle.

¶ 6     The jury found Johnson guilty of second degree murder, a lesser included offense of first degree murder. He was convicted and sentenced accordingly.

¶ 7     Johnson appeals, arguing that the trial court erred by (1) excluding the cocaine metabolite and THC metabolite evidence; (2) excluding the CTE testimony; and (3) instructing the jury on the provocation exception to self-defense. He also argues that the

2

cumulative effect of these errors warrants relief.  We disagree with all of these arguments and affirm.

## II.     Drug Metabolite and CTE Evidence

¶ 8      The trial court ruled that the drug metabolite and CTE evidence was inadmissible under CRE 403.  Johnson contends that this was error.  We disagree.

## A.     Governing Standards

¶ 9      We review evidentiary rulings like those applying CRE 403 for an abuse of discretion.  *See People v. Vanderpauye*, 2023 CO 42, ¶ 23.  A trial court abuses its discretion by misapplying the law or making a ruling that is manifestly arbitrary, unreasonable, or unfair.  *Id.*

¶ 10      Evidence is relevant and generally admissible if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable."  CRE 401, 402.  However, relevant evidence is inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.  CRE 403.  When applying this balancing test, we assume the maximum

probative value and the minimum unfair prejudice attributable by a reasonable fact finder. *See Vanderpauye,* ¶ 59.

### B. Drug Metabolite Evidence

¶ 11 Johnson argues that the drug metabolite evidence was relevant and admissible because it showed that Cunningham was under the influence of cocaine and THC at the time of the shooting and was therefore more likely to have behaved aggressively, in turn making it more likely that Johnson was justified in using force to defend himself. But Johnson concedes that the drug metabolite evidence did not establish that Cunningham was under the influence of either cocaine or THC on the day of the shooting. As Johnson recognizes, the drug metabolite evidence merely showed that Cunningham ingested cocaine and THC at some undetermined time prior to the shooting, perhaps even days earlier. Consequently, the drug metabolite evidence was not very probative of Cunningham's behavior on the day of the shooting.

¶ 12 On the other hand, the danger that this evidence would result in unfair prejudice or mislead the jury was significant. Had jurors heard that Cunningham died with cocaine metabolite and THC metabolite in his body, they would have been invited to make

improper inferences based on Cunningham's prior drug use. The evidence would have also likely created confusion about whether the presence of the drug metabolites meant that Cunningham was under the influence of the drugs at the time of the shooting.

¶ 13    The trial court determined that these dangers substantially outweighed the limited probative value of the drug metabolite evidence. We cannot say that this determination was manifestly arbitrary, unreasonable, or unfair. We therefore conclude that the court did not abuse its discretion by excluding the drug metabolite evidence.

### C.    CTE Evidence

¶ 14    Johnson argues that the CTE testimony should have been admitted under the CRE 403 balancing test to show that Cunningham was "acting in an overly aggressive (or unusual) manner" on the day of the shooting.

¶ 15    The first witness through whom Johnson sought to admit CTE evidence was the forensic pathologist who conducted the autopsy. On appeal, Johnson argues that she would have testified about whether she examined Cunningham's brain for signs of CTE during the autopsy and, if so, what she found. Importantly, at trial,

defense counsel represented to the court that the forensic pathologist would have testified that she did not examine Cunningham's brain for CTE.

¶ 16　　Contrary to Johnson's argument on appeal, the forensic pathologist's testimony that she did not examine Cunningham's brain for CTE would have shed no light on whether he was behaving aggressively on the day of the shooting. And admitting it would have risked confusing the issues for the jury — it would have invited the jury to speculate about whether Cunningham had CTE without explaining what CTE is or how it can affect a person's behavior. We therefore disagree with Johnson's argument that the court abused its discretion by excluding CTE testimony from the forensic pathologist.

¶ 17　　The second witness who might have testified about CTE was Cunningham's wife. Defense counsel sought to ask her about whether Cunningham had CTE or had ever been diagnosed with CTE. The trial court sustained the prosecution's objection to this line of inquiry under CRE 403.

¶ 18　　As above, we do not see how this testimony would have been probative of Cunningham's behavior on the day of the shooting.

Even if Cunningham's wife had testified that he had been diagnosed with CTE, there is no indication in the record that she would have been able to explain to the jury what CTE is and how the disease affects a person's behavior. Without that explanation, Cunningham's wife's testimony would be minimally probative of his behavior on the day of the shooting. And this testimony carried the same risk of confusing the issues for the jury as the forensic pathologist's excluded testimony. Accordingly, we conclude that preventing Cunningham's wife from testifying about CTE was not manifestly arbitrary, unreasonable, or unfair.

### III.    Provocation Instruction

¶ 19     Johnson next argues that the trial court erred by instructing the jury on the provocation exception to self-defense because there was no evidence to support provocation. We review the court's decision to give this instruction de novo. *See Galvan v. People*, 2020 CO 82, ¶ 33 n.9. We conclude that there was enough evidence of provocation to justify giving the instruction.

¶ 20     The affirmative defense of self-defense allows a defendant to use a reasonable degree of physical force to defend against what the defendant reasonably believes to be the imminent use of unlawful

7

physical force by another. § 18-1-704(1), C.R.S. 2024. However, there are exceptions — circumstances under which the affirmative defense of self-defense is unavailable. One of these exceptions is provocation. Under the provocation exception, self-defense is unavailable to any defendant who, with intent to cause bodily injury or death to another person, provokes the use of unlawful physical force by that other person as a pretext for the defendant's own use of physical force. § 18-1-704(3)(a); *Galvan*, ¶ 19.

¶ 21 The prosecution is entitled to a provocation instruction if there is "some evidence" to support provocation. *Galvan*, ¶ 25. The "some evidence" threshold is low — it requires only a scintilla of evidence to meet it. *Id.* at ¶ 24. And reviewing courts evaluate whether that low threshold was met by viewing the evidence in the light most favorable to giving the instruction. *Id.* at ¶ 33.

¶ 22 Johnson argues that a provocation instruction was inappropriate here because there was no evidence of the intent element of provocation. In other words, he contends there was no evidence that Johnson provoked Cunningham with the intent to make Cunningham attack first as a pretext for Johnson's own use

8

of physical force. Viewing the evidence in the light most favorable to giving the instruction, we disagree.

¶ 23 Several surveillance cameras recorded the altercation in the street in front of the two men's homes. The videos show Cunningham retrieving items from his car when Johnson approaches him and initiates an interaction. During that interaction, Johnson is the first to adopt a fighting stance and maintains that fighting stance for significantly longer during the interaction than Cunningham does. A reasonable juror could view that footage as evidence that Johnson approached Cunningham that morning intending to goad Cunningham into a physical fight, whether that fight was to occur on the street or minutes later at the high school. And the fact that Johnson so quickly shot Cunningham at the high school reasonably suggests that he goaded Cunningham into a physical altercation intending all along to ultimately use deadly force.

¶ 24 Because there was at least a scintilla of evidence supporting provocation, we conclude that the court did not err by giving the instruction.

## IV.  Cumulative Error

¶ 25    Finally, Johnson argues that if no single error alleged on appeal warrants reversal, their cumulative effect does.  Having rejected all his individual claims of error, we necessarily reject this one as well.

## V.    Disposition

¶ 26    The judgment of conviction is affirmed.

JUDGE HARRIS and JUDGE GROVE concur.